IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BRADD HANCOCK, and EDNA HANCOCK, individually and as Successors in Interest to J.H., Deceased,<br><br>    Plaintiffs,<br><br><br>vs.<br><br><br><br>NORTH SANPETE SCHOOL DISTRICT; NORTH SANPETE SCHOOL BOARD; BRIAN NIELSON, SHERIFF OF SANPETE COUNTY; SANPETE COUNTY SHERIFF DEPARTMENT; PRESIDENT KATHRYN PARNELL; COURTNEY SYME; JIM BOWLES; GREG PETERSON; JOHN ERICKSON; JASON STRATE; COLE YOUNG, RANDY SHELLEY, and JOHN DOES 1-20,<br><br>    Defendants. | **MEMORANDUM ORDER AND DECISION**<br><br><br><br><br>Case No. 2:12-cv-00072<br><br>Judge Dee Benson |

Before the Court is Defendant North Sanpete School District's (the "School District")

Motion to Dismiss Plaintiffs Bradd Hancock and Edna Hancock's (collectively "Plaintiffs")

State Law Causes of Action (Causes of Action 2-7) (Dkt. No. 5). The issue is whether the state

law causes of action alleged against the School District are barred under the Governmental

Immunity Act of Utah. The Court heard oral argument on this matter on June 25, 2012. The Court now delivers this Memorandum Order and Decision.

## I. FINDINGS OF FACT

### A. Introduction

Because this is a motion to dismiss, the Court accepts the facts alleged in the Complaint as true. *See, e.g. Smith v. Untied States*, 561 F.3d 1090, 1098 (10th Cir. 2009). In addition, *only* the allegations in the Complaint are before the Court. *Apffell v. Huddleston*, 50 F.Supp 2d 1129, 1133 (D. Utah 1999) (emphasis added). Thus, the new allegations asserted by Plaintiffs in their Memorandum in Opposition to Defendant's Motion to Dismiss (Dkt. No. 18) are not before the Court for purposes of deciding Defendant's motion to dismiss.[1]

This lawsuit arises from the suicide of J.H., a former student enrolled in the North Sanpete School District. (Comp. ¶¶ 25, 26). Plaintiffs are J.H.'s parents. *Id.* at ¶ 25. The School District is a political subdivision of the State of Utah as defined in Utah Code Ann. § 63G-7-102(7). *Id.* at ¶ 2.

### B. J.H at North Sanpete Middle School

As early as 2005, J.H. was the victim of harassment and bullying at North Sanpete Middle School. *Id.* at ¶ 27. A group of students made repeated derogatory slurs towards J.H., pushed him up against a wall, and, at one point, attacked him. (Compl. ¶¶ 27-30). Plaintiffs allege Principal Randy Shelley would not release a video recording of the attack, even though

---

[1] Even if the Court were to consider the new allegations presented in Plaintiffs' opposition memorandum, based on the analysis below, it is clear Plaintiffs knew, or should have known, that they had a cause of action against the School District before the statutory deadline set forth in Utah Code Ann. § 63G-7-402.

the video showed J.H. defending himself against the attack. *Id* at 31. Plaintiffs further allege Principal Shelley's position was that "he did not care what happened in the future," and if there was another incident involving J.H., then J.H. would be expelled. *Id.* at ¶¶ 33-34. One of the school counselors, Ms. Briggs, informed Plaintiffs that Principal Shelley and North Sanpete Middle School were trying to "sweep the incident under the rug." *Id*. at ¶ 38. She also informed Plaintiffs that if she told the truth about the allegations, she would be terminated. *Id*.

A few months later, Plaintiffs reported to the School District a hazing incident involving J.H. in the boy's locker room. *Id.* at ¶¶ 39-41. The School District offered to purchase a new towel for J.H., but nothing further. *Id.* at ¶ 42. Plaintiffs allege that, "[t]he bullying by this group of students and the School District's ineptitude in handling matters led to J.H. having a mental breakdown and being put in detention." *Id.* at ¶ 45. Furthermore, Plaintiffs allege, "J.H. feared for his mental and physical safety each time he went to school and the School District was indifferent to these experiences and allowed them to continue." *Id.* at ¶ 46.

**C.  J.H. at North Sanpete High School**

In approximately 2006, after J.H. began attending North Sanpete High School, Plaintiffs informed the School District of increased threats against J.H. *See id*. at ¶¶ 48-50. These threats included several threats from a student that he was "going to kill" J.H. *Id*. Plaintiffs also told Principal John Erickson and Resource Officer Greg Peterson about these threats. *Id* at ¶ 51. Plaintiffs allege Principal Erickson "understood that the peer harassment . . . was the reason for J.H.'s increasing hostility and anger towards others." (Compl. ¶ 51).

In 2008, J.H. attempted to take his own life. *Id.* at ¶ 65. Plaintiffs allege the School

District was aware of J.H.'s attempt. *Id.* Plaintiffs also allege the School District did not address J.H.'s severe depression and emotional outbreaks, use of abusive language, or bizarre behavior. *Id.* at ¶¶ 67-69. Plaintiffs further allege the School District was aware that J.H. was taking medication for depression and that he was suicidal, and yet, it took no meaningful action. *Id.* at ¶ 72. Plaintiffs specifically allege, "[i]n the fall of 2009 it was clear, or should have been clear, that J.H. [was] headed for disaster." *Id.* at ¶ 74.

In the fall of 2009, J.H. joined the football team during his junior year. *Id.* at ¶ 75. Plaintiffs allege the football coach "intentionally made things worse for J.H." *Id.* Plaintiffs allege the coach made derogatory slurs towards J.H. and encouraged hazing. *See id*. at ¶¶ 76-78. At one point, the coach punched J.H. in the face. *Id.* at ¶ 83.

Plaintiffs approached Principal Jim Bowles about the harassment J.H. was receiving from the football coach. *See id*. at ¶¶ 87-90. In addition, Plaintiffs told Principal Bowles they believed Vice Principal Jason Strate was sharing personal information about J.H. with School District officials in situations where other students could overhear the conversations. *See id.* Plaintiffs continued to complain to School District officials about the perceived indifference toward, and lack of help for, J.H. *Id*. at ¶ 91.

Two weeks after this meeting, the School District suspended J.H. following an investigation into allegations of sexual assault committed by J.H. *See id*. at ¶¶ 92-111. Plaintiffs attempted to get J.H. enrolled in other schools so that he could complete his education. *See id.* Plaintiffs allege the School District's handling of the sexual assault allegations made it so J.H. could not enroll in any other schools. (Compl. ¶ 113).

Finally, Plaintiffs allege that after more than five years of the harassment and abuse described above, on January 21, 2010, "as an actual, legal and proximate result of all of the harassment alleged herein, and as an actual, legal and proximate result of all of the reckless, deliberately indifferent, negligent and other wrongful acts and omissions of Defendants," J.H. took his own life." *Id.* at ¶ 117.

Plaintiffs filed a notice of claim on January 9, 2012.  (Mem. Support Def.'s Mot. to Dismiss 4 (Dkt. No. 6)).  Plaintiffs allege six common law tort claims: Fraud (Second Cause), Infliction of Emotional Distress (Third), Assault and Battery (Fourth), Negligence (Fifth), Wrongful Death (Sixth), and Breach of Fiduciary Duty (Seventh) (together, the "state law claims").  *Id.* at 2.  Plaintiffs also assert a U.S.C. § 1983 claim for the loss of familial association under the First and Fourteenth Amendments that is not at issue in this motion.  (Compl. ¶ 26).

## II.  STANDARD OF REVIEW

Whether a complaint sufficiently states a claim for relief is a question of law.  *Bauchman v. West High Sch.*, 132 F.3d 542, 550 (10th Cir. 1997) (citing *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir.1995).  Courts accept all well-pleaded facts as true and draw inferences from those facts in the plaintiffs' favor.  *Bauchman*, 132 F.3d at 550.  However, Courts need not accept "unwarranted inferences drawn from the facts or footless conclusions of law predicated upon them."  *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990).

The complaint must contain "enough facts to state a claim for relief that is plausible on its face," and claims that fail to raise a right to relief above the speculative level must be dismissed.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff must "'nudge [his]

claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Ridge at Red Hawk*, *L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177 (alterations in original). Rule 12(b)(6) motions terminate suits that "are fatally flawed in their legal premises and destined to fail." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed Cir. 1993).

### III.  ANALYSIS

**A.  The Governmental Immunity Act of Utah**

The Governmental Immunity Act of Utah, Utah Code Ann. § 63G-7-101 *et seq.*, requires "any person having a claim against a governmental entity or against its employee . . . shall file a written notice of claim with the entity before maintaining an action." Utah Code Ann. § 63G-7-401(2). A claim against a governmental entity "is barred unless notice of claim is filed . . . according to the requirements of Section 63G-7-401 *within one year after the claim arises* . . . ." Utah Code Ann. § 63G-7-402 (emphasis added).

The Utah Supreme Court has "consistently and uniformly held that suit may not be brought against the state or its subdivisions unless the requirements of the Governmental Immunity Act are strictly followed." *Wheeler v. McPherson*, 40 F.3d 632, 635 (Utah 2002). Where a notice of claim is not timely filed, the court lacks jurisdiction over the plaintiff's claims.

*Id.* at 637; *see also Sadwick v. University of Utah*, 2001 WL 741285 (D. Utah) at *12, 14 citing *Nielson v. Gurley*, 888 P.2d 130, 134 (1995) (holding "failure to comply with the notice requirement [of the Utah Governmental Immunity Act] deprives the court of subject matter jurisdiction").

Accordingly, Plaintiffs were required to file a notice of claim within one year after their claims against the School District arose. A claim arises under the Governmental Immunity Act "when the statute of limitations that would apply if the claim were against a private person begins to run." Utah Code Ann. § 63G-7-401(1)(a). The statute of limitations is triggered "upon the happening of the last event necessary to complete the cause of action." *Russell Packard Dev., Inc., v. Carson*, 108 F.3d 741, ¶ 20 (UT 2005). Thus, at the latest, Plaintiffs' state law claims arose on the day of J.H.'s death: January 21, 2010. (Compl. ¶ 117). Plaintiffs consequently should have filed a notice of claim on or before January 22, 2011. However, Plaintiffs did not file a notice of claim until January 9, 2012, almost a full year past the statutory deadline. Plaintiffs' state law claims are thus barred as a matter of law. *See* Utah Code Ann. § 63G-7-402.

**B. Utah Code Annotated § 63G-7-401(1)(b)**

To circumvent this finding, Plaintiffs rely on Utah Code Ann. § 63G-7-401(1)(b) to argue that the one-year requirement of the Governmental Immunity Act was tolled until Plaintiffs knew, or should have known, that they had a claim against the School District. *See* Pl.'s Mem. Opp. Def.'s Mot. to Dismiss 10 (Dkt. No. 18)). Utah Code Ann. § 63G-7-401(1)(b) states:

> The statute of limitation does not begin to run until a claimant knew, or with the exercise of reasonable diligence should have known: (i)

> that the claimant had a claim against the governmental entity or its employee; and (ii) the identity of the governmental entity or the name of the employee.

Plaintiffs argue there is "nothing in the record to establish that Plaintiffs knew, or should have known, that they had a claim against a governmental entity at the time of [J.H.'s] death, or that Plaintiffs knew the identity of the governmental entity . . . that caused the harm to [J.H.] and Plaintiffs." (Pl.'s Mem. Opp. Def.'s Mot. to Dismiss 10 (Dkt. No. 18)). Specifically, Plaintiffs argue they did not know they had a claim until the spring or summer of 2011 because the School District hid evidence of J.H.'s death and the identities of the defendants. *Id.* at 1.

Plaintiffs' claims in opposition to the present motion are not substantiated by the record and are flatly contradicted by Plaintiffs' own Complaint. In light of those allegations two things are abundantly clear: (1) Plaintiffs believed the School District caused their son's suicide; and (2) they had this belief and the information upon which it was based as of the date of his suicide.

A notice of claim is a general claim. "Nothing in the [Governmental Immunity] Act requires a claimant to set forth in the notice of claim each specific cause of action that might be pleaded against the government entity." *Cedar Professional Plaza, L.C., v. Cedar City Corporation*, 2006 UT App 275, ¶ 9, 131 P.3d 278. Rather, the Act requires the notice of claim to set forth: (1) a brief statement of the facts; (2) the nature of the claim asserted; and (3) the damages incurred by the claimant so far as they are known. *See id.* (citing Utah Code Ann. §§ 63G-7-401(3)(a)(i)-(iii)). "The notice need not meet the standards required to plead a claim for relief, but must include only 'enough specificity in the notice to inform as to the nature of the claim so that the defendant can appraise its potential liability.'" *Cedar Professional Plaza, L.C.*,

2006 UT 275 at ¶ 9, 131 P.3d 278 (citing *Houghton v. Department of Health*, 2005 UT 63, ¶ 20, 125 P.3d 860).

The Complaint alleges Plaintiffs communicated with a principal, counselor, officer, or School District official regarding J.H. multiple times in 2005, 2006, and 2009. Specifically, Plaintiffs allege:

- "[Plaintiffs] went to the middle school to talk to the Resource Officer and the Principal. The middle school's position was that the details of the [attack on J.H.] did not matter . . . [Principal Shelley] indicated to [Plaintiffs] that he did not care what happened in the future . . . because if there was another incident involving J.H. – then J.H. would be expelled." (Compl. ¶¶ 33, 34).

- "This incident [in the boys locker room] was reported to the School District by [Plaintiffs] and other. The School District's response was to offer to purchase [Plaintiffs] a new towel for J.H." (Compl. ¶ 41).

- "[Plaintiffs] informed the School District of the threat [to kill J.H.], including discussions with Principal John Erickson . . . and the Resource Officer Greg Peterson . . . ." (Compl. ¶ 50).

- "[Plaintiffs] called the police dispatch and reported [a student] following J.H. . . . On information and belief, the police dispatch called the Resource Officer Greg Peterson about [the student] following J.H. Greg Peterson followed up with J.H. shortly after it was reported to dispatch. Greg Peterson told J.H. that if [Plaintiffs] continued to contact dispatch . . . Peterson would 'make J.H's life hell." (Compl. ¶¶ 56-58).

- "[Plaintiffs] spoke with Principal Erickson about the issues and Erickson essentially told [Plaintiffs] that J.H. should just fight [his tormentors] and that would solve the problem . . . ." (Compl. ¶ 59).

- "[Plaintiffs] approached Principal Bowles in the fall of 2009 about the problems J.H. was having at school regarding the coaches, the hazing, the harassment, and the bullying. Thereafter, [Plaintiffs] discussed with the Principal [Plaintiffs] belief that Strate had been sharing personal information about J.H. with other school officials at the high school, and in situations where in other kids could hear their discussion about J.H." (Compl. ¶ 87).

- "[Plaintiffs] pressed the School District officials for information regarding the allegations made against J.H., but the School District would not provide any details to [Plaintiffs] or to J.H." (Compl. ¶ 100).

Based on these allegations, it is evident Plaintiffs knew they had a claim against the School District within one year from the time of J.H.'s death on January 21, 2010. Plaintiffs unquestionably had enough information to put forth a brief statement of the facts, with the nature of their claim asserted, and their damages. *See* Utah Code Ann. §§ 63G-7-401(3)(a)(i)-(iii). Plaintiffs were not required, or entitled, to wait until they knew all of the facts supporting their claims against the School District. *See Cedar Professional Plaza, L.C.*, 2006 UT 275 at ¶ 14, 131 P.3d 280. Indeed, it was enough that Plaintiffs were "aware that the governmental entity's action or inaction ha[d] resulted in some kind of harm to [their] interests." *Cedar Professional Plaza, L.C.*, 2006 UT 275 at ¶ 14, 131 P.3d 280 (citing *Bank One Utah, N.A. v. West Jordan City,* 2002 UT App 271, ¶ 12, 54 P.3d 135).

Furthermore, in contrast to Plaintiffs' allegations in their Memorandum in Opposition to Defendant's Motion to Dismiss (Dkt. No. 18), there are no allegations in the Complaint itself of an attempt by the School District to hide evidence of J.H.'s death or the identities of the defendants. *Compare Vincent v. Salt Lake County*, 583 P.2d 105, 107 (Utah 1978) (holding that the one-year limit under the Governmental Immunity Act was tolled until the plaintiff learned, despite the defendant's contrary representations, that the defendant's storm drain was the cause of damage).

Given the specific allegations against the School District in Plaintiffs' Complaint, the Court will not permit Plaintiffs to now successfully argue that they did not know they had a

cause of action against the School District until after the one-year statutory deadline in Utah Code Ann. § 63G-7-402.

## CONCLUSION

Based on the reasoning above, Defendant's Motion to Dismiss Plaintiffs' State Law Causes of Action (Causes of Action 2-7) is GRANTED.  Plaintiff's state law causes of action are DISMISSED as to Defendant North Sanpete School District with prejudice.

DATED this 25th day of July, 2012.

_____

Dee Benson
United States District Judge